UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-292-GWU

JESSICA N. LAWSON,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

## INTRODUCTION

The plaintiff, Jessica Lawson, appeals from the negative administrative decision on her own applications for Child's Disability Insurance Benefits (CIB), Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). The case is before the Court on cross-motions for summary judgment.

## CHILD'S DISABILITY INSURANCE

An individual who becomes disabled as defined by 42 U.S.C. Section 423(d) before attaining the age of twenty-two, who is the dependent child of a person entitled to old age or disability insurance benefits or fully insured at the time of his/her death, and who is unmarried at the time of application, is entitled to CIB. 42 U.S.C. Section 402(d)(1).

CIB benefits employ the same disability standards as are used to determine disability in adults. 42 U.S.C. Section 423(d).

1

Lawson

## ADULT SSI AND DIB BENEFIT STANDARDS

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 CFR 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 CFR 404.1520(c), 404,1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?   If yes, the claimant was not disabled. If no, proceed to Step 7.  See 20 CFR 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work

Lawson

> experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on

3

Lawson

the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 CFR Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.

Lawson

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then

5

Lawson

an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan,

6

Lawson

905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services,

## DISCUSSION

At the outset, it must be noted that certain factors work against Lawson in the present case with regard to her claims for CIB and DIB. The plaintiff,  who was born in September, 1980 (Tr. 47, 61) had to establish disability prior to September 26, 2002 in order to be granted her claim for CIB.  She had to establish disability prior to her September 30, 2002 Date Last Insured (Tr. 61) in order to be eligible for  DIB.  As the plaintiff's alleged onset date was June 1, 2001, for CIB and DIB purposes, she had only a fairly narrow time frame of less than one year in which to establish disability.  Notably, as the defendant points out,  none of the medical or mental health exhibits were dated before June, 2003 (Tr. 3-4), which puts Lawson at a

7

distinct disadvantage. Automatically "relating back" any actual functional deficits to the appropriate period prior to October, 2002, moreover, is also very problematic. While the plaintiff later demonstrated mental health issues (including, but not limited to, post traumatic stress syndrome), the trauma itself had occurred when she was much younger (Tr. 156, 255), and afterwards she had apparently been able to graduate from high school (Tr. 86) and work for years afterward, including one year as a dining room supervisor (Tr. 157). In the present record, she is only documented to have sought sought mental health specialist treatment in 2004,[1] and then only intermittently to the point she was described as "non compliant". (Tr. 133). A consultative examiner who saw her that same year, cited a current GAF. (Tr. 159). A treating physical examiner had described her alternatively in 2004 as having a grossly normal mental health status (Tr. 136) or as anxious (Tr. 141). The only sources to specifically address the time frame prior to October, 2002 indicated that there was insufficient evidence upon which to base any mental health diagnosis. (Tr. 184, 198). Thus, there was more than substantial evidence upon which to deny the CIB and DIB claims.

With regard to the SSI claim, Lawson had to establish disability on or after the May 20, 2004 protective filing date of her SSI claim (Tr. 4) in order to be eligible for

---

[1]The plaintiff did testify that she had seen a psychiatrist since she was 15 years of age (Tr. 255), but these records were not submitted to verify this fact or the length or intensity of treatment.

Lawson

those benefits. For this period, the administrative law judge (ALJ) found that Lawson suffered from "severe" post traumatic stress disorder and a depressive disorder. (Tr. 16).[2]  He determined that certain mental restrictions were in order and, based on vocational expert information, felt that a significant number of jobs were still available. (Tr. 21, 218, 263-264)

In doing so, the ALJ chose not to use the restrictions or adhere to the low GAF level cited by the consultative examiner (Tr. 159).  He rejected this lone mental functional capacity assessment from a specialist examiner, albeit mainly upon what appears to be his own interpretation of the inconsistencies in one section of the examiner's report. (Tr. 17).[3]  This does appear at some odds with the only medical reviewer commentary addressing the examiner's report in detail and finding it worthy of "great weight." (Tr. 168). Even assuming that the reviewer had provided some type of specific rationale to reject portions of the examiner's assessment, the ALJ did not directly quote the limitations cited in the summary conclusions of the medical reviewers either, or even closely quote the functional capacity assessment comments made by the  medical reviewer (e.g., the "isolated setting", etc. at  Tr.

---

[2] As was noted by the defendant, the plaintiff does not now challenge the ALJ's determination that she had alleged no "severe" physical impairments (Tr. 16).

[3] Specifically, the ALJ indicated that the consultative examiner's references at Tr. 159 referring to work pressures were inconsistent. The Court, however, notes that the two paragraphs at issue did involve somewhat different factors being assessed, with item number 2 referring only to work stress and pressures, while item number 4 also referred to supervision and co-workers.  Thus, the report is not as inconsistent as was claimed.

Lawson

168).  The more paraphrasing that it done, the less clear the professional restrictions were followed.

There is at least some evidence to show that the post traumatic stress and depressive conditions, diagnosed on at least two occasions in 2004 (Tr. 133, 154), did or were expected to last some period of time.  The consultative examiner indicated that the prognosis for improvement of her condition was only "fair", even with mental health intervention. (Tr. 160).

The case must be remanded for further consideration of Lawson's SSI claim. In other aspects, it will be affirmed.

This the 4th day of April, 2007.

**Signed By:**

_G. Wix Unthank_

**United States Senior Judge**